## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                          CRIMINAL ACTION NO.   3:20-00150

ROWDY LEE RANDOLPH

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Rowdy Lee Randolph's Renewed Motion to Suppress the Search of Defendant's Property and the Seizure of Evidence from that Property. ECF No. 67. For the following reasons, the Court **DENIES** the motion.

On August 19, 2020, the grand jury returned a two-count indictment against the defendant, charging him with Possession with Intent to Distribute Marijuana in violation of 21 U.S.C. § 841(a)(1) (Count One) and Use and Discharge of a Firearm During and in Relation to a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Two).[1] The defendant's then counsel filed a Motion to Suppress. Soon thereafter, the defendant retained different counsel, who filed a motion to continue. The Court granted the motion, and it was followed by a series of motions to continue, with the parties representing, in part, that they were negotiating a plea agreement.

---

[1]On January 26, 2022, a superseding indictment was returned that added brandishing to Count Two under § 924(c)(1)(A)(ii) and added a charge of Knowingly Possessing a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three). ECF No. 114.

On May 26, 2021, the defendant retained his third and current counsel, who filed additional motions to continue. The Court granted the motions. The Court also denied without prejudice the Motion to Suppress filed by the defendant's first counsel.

On October 5, 2021, his counsel filed the pending Renewed Motion to Suppress the Search of Defendant's Property and the Seizure of Evidence from that Property. On November 1, 2021, the Court held a hearing on the motion. At the conclusion of that hearing, the Court ordered the parties to submit supplemental briefing. Having now reviewed the briefing and upon consideration of the evidence presented at the hearing, the Court finds no grounds to suppress the search or the seizure of evidence.

At the motion hearing, the Government first offered the testimony of Lieutenant Chris Zerkle, a West Virginia State Police Officer, who has been involved in West Virginia's marijuana eradication program for many years. Lt. Zerkle is experienced as a "spotter" in serial surveillance, flying over areas in a helicopter looking for growing marijuana. He testified that the helicopter has to stay at least 500 feet above ground level—unless and until—marijuana is spotted. *Tr. of Nov. 1, 2021 Mot. Hr'g* at 7, ECF No. 92. The helicopter used by West Virginia State Police are marked by a patch or seal of the West Virginia State Police or West Virginia Air National Guard. *Id*. at 6. In addition, Lt. Zerkle wears a flight suit with the exact same West Virginia State Police patches as those worn on his regular uniform. *Id*. at 8.

On August 4, 2020, Lt. Zerkle was serving as a spotter in an Air National Guard helicopter flying over Mason County, West Virginia. It was an area he was familiar with from past

eradication activities. *Id*. at 15. He specifically recalled having found marijuana in the past in an area he knew as "the Randolph farm." *Id*. As the helicopter flew over the Randolph farm, Lt. Zerkle spotted marijuana growing next to the front of a mobile home. *Id*. 16-17. Lt. Zerkle estimated the marijuana to be eight feet tall. *Id*. at 17. Lt. Zerkle noted that the plants were growing behind a privacy fence that made it difficult to see at ground level. *Id*. at 31.[2]

Lt. Zerkle then contacted officers on the ground, who were in vehicles supporting the eradication activities. Upon learning that these officers were about forty-five minutes away, Lt. Zerkle and his colleagues in the helicopter decided to land in an open, back field. *Id*. at 18-19. Their plan was to remove the plants, attempt to contact the property owner, and secure the area until the ground unit arrived. *Id*. at 20.

As the helicopter was descending, Lt. Zerkle observed the defendant driving a farm tractor at a high speed directly toward the mobile home. *Id*. at 21-22. Suspecting that the defendant was going to destroy the marijuana plants, the decision was made to land the helicopter closer to the plants and the home. *Id*. at 22. While still descending, Lt. Zerkle saw the tractor crash through a gate and try to get through a second gate. *Id*. He also noticed what appeared to be a rifle on the tractor. *Id*. at 24. Additionally, he saw another person, the defendant's brother, on an ATV under the helicopter, apparently trying to prevent it from landing. *Id*. at 23. Nonetheless, the helicopter was able to get to a spot where it could hover close enough to the ground for Lt. Zerkle and Corporal Ward to jump out. *Id*. at 25.

---

[2]Although difficult to see, Lt. Zerkle thought the marijuana probably could be seen from the ground. *Id*.

Once on the ground, the officers proceeded to the corner of the mobile home where the plants were located. When they reached the marijuana, Lt. Zerkle saw through a slatted fence that the defendant had a rifle and was walking down the driveway. *Id*. at 25-26. Lt. Zerkle announced he was a State Police officer and told the defendant to drop his weapon. *Id*. at 26. The defendant raised the rifle and fired at them. Lt. Zerkle returned fire, and the defendant fell to the driveway. *Id*. After a brief standoff, other officers arrived, and the defendant and his brother were arrested. Officers also confiscated the marijuana plants, and a search warrant was obtained for the residence.

Following Lt. Zerkle's testimony, the defendant called Sara Riggs to testify. Ms. Riggs lived on the Randolph property with her children. *Id*. at 50-51. She testified that she saw the helicopter hover close to the ground, but she did not see it land. *Id*. at 52. She said she could feel the wind from it, and she felt the property was disturbed by the flyover. *Id*. at 51-52.

The defendant next called Staci Randolph to testify. Mrs. Randolph is married to the defendant's brother and lives close to the property. *Id*. at 27, 53. She said she heard a loud noise and, when she stepped outside her house, the helicopter flew very close over her house. *Id*. at 54. She said the helicopter flew in circles numerous times, and she said she was afraid because it was flying so low. *Id*. at 54-55.

In his motion, the defendant argues that the manner in which the search was conducted violated the Fourth Amendment's guarantees of "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" by

-4-

government actors. U.S. Const. amend. IV. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984). A person is ordinarily entitled to "'the most stringent Fourth Amendment protection'" within the curtilage of the home. *United States v. Taylor*, 90 F.3d 903, 908 (4th Cir. 1996) (quoting *United States v. Martinez–Fuerte*, 428 U.S. 543, 561 (1976)). However, if an activity or object is exposed to the public view, there is not a search within the Fourth Amendment. *Id.* (citations omitted).

In this case, the Court has no difficulty finding that the marijuana was within the curtilage of the home and, as a result, the defendant was entitled to the most stringent protection under the Fourth Amendment.[3]  Nevertheless, there is no violation of the Fourth Amendment even when the marijuana is within the curtilage if it can be seen from a public view in a physically nonintrusive way. *See California v. Ciraolo*, 476 U.S. 207, 213 (1986) ("That the area is within the curtilage does not itself bar all police observation"). Thus, the issue for this Court to resolve is whether Lt. Zerkle's view of the plants falls within those constitutional parameters. In deciding this issue, the Court finds instructive the Fourth Circuit's decision in *United States v. Breza*, 308 F.3d 430 (4th Cir. 2002).

_____

[3]In *United States v. Dunn*, 480 U.S. 294 (1987), the Supreme Court explained:

> curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

480 U.S. at 301 (citations and footnote omitted). In this case, the evidence is that the marijuana was growing immediately beside the mobile home, and the area was enclosed by a tall wooden fence. *Tr.* at 25-26, 31.

In *Breza*, the defendant entered a conditional plea to a marijuana charge. Similar to this case, the defendant argued that an aerial surveillance of his property and the seizure of marijuana in his vegetable garden violated his Fourth Amendment rights. 308 F.3d at 432. As here, the law enforcement officers in *Breza* were conducting aerial surveillance as part of a drug interdiction operation and noticed what they suspected was marijuana growing on the defendant's property. At the time, the officers were at a height of about 500 feet so they descended to approximately 200 feet and confirmed the plants were marijuana. *Id*. at 433. The helicopter then "ascended to navigable airspace and radioed nearby officers stationed on the ground, who immediately proceeded to [the defendant's] property" and seized the plants. *Id*. Although the defendant argued that the aerial surveillance constituted an unconstitutional warrantless search because the helicopter had descended to a height which violated FAA regulations, the Fourth Circuit held there was no Fourth Amendment violation based upon the district court's finding that the helicopter complied with the FAA regulations and because flights in the area of the defendant's property were a regular occurrence. *Id*. 434-35[4] (citing *Florida v. Riley*, 488 U.S. 445, 449-51 (1989) (finding no Fourth Amendment violation when marijuana was observed by law enforcement while in navigable airspace at 400 feet); *Ciraolo*, 476 U.S. at 213-14 (1986) (holding, where officers observed marijuana from a navigable airspace of 1,000 feet and "in a physically nonintrusive manner," there was no Fourth Amendment violation); *Giancola v. W. Va. Dep't of Pub. Safety*, 830 F.2d 547, 548, 551 (4th Cir. 1987) (finding no Fourth Amendment violation where the helicopters were reported to have flown at 100 feet, but they were permitted by federal regulations to fly below altitude so long as they were not hazardous).

---

[4]The Fourth Circuit also rejected the defendant's argument that the vegetable garden was within the curtilage of his home. *Id*. at 436-37.

In this case, Lt. Zerkle testified that the Randolph farm was an area he knew well as he previously had flown over the area and had discovered marijuana there. *Tr.* at 15. On the day in question, Lt. Zerkle stated that he observed approximately eight-foot, very bushy marijuana growing right next to the mobile home. *Id*. at 16-17. At that point in time, the helicopter was 500 feet above ground level, which was within FAA regulations. *Id*. at 17.

After he saw the marijuana, Lt. Zerkle attempted to contact officers on the ground to come to the scene. However, the officers were about 45 minutes away, and he was told it would take them a while to get to the property because they were involved with a previous arrest. *Id*. at 18. While he was contacting the ground unit, the helicopter was circling.

As the ground unit was not immediately available and they were concerned about the amount of fuel the helicopter had left, the decision was made to land the helicopter in a back field away from any residence. *Id*. at 18-20. Lt. Zerkle stated that he and another officer on the helicopter intended "to walk down to the trailer, harvest the plants, make contact with the owner, whatever." *Id*. at 20. When asked to explain further whether it was his intent to immediately harvest the plants, Lt. Zerkle responded that their plan was "to secure the area," try to call the ground crew again, and try to make contact with the homeowner. *Id*. However, as they were descending to land in a safe location, they noticed the defendant moving so quickly on the farm tractor toward the mobile home that he was "bouncing" and "getting beat around." *Id*. at 21. Thinking the defendant was rushing to destroy the evidence, the helicopter lifted back up to fly closer to the mobile home, and the defendant's brother then drove a four-wheeler under the helicopter and attempted to prevent it from landing. *Id.* at 22-23.

In considering the defendant's Fourth Amendment argument, the Court finds that the helicopter was at 500 feet above ground level and within FAA regulations at the time the marijuana was observed.[5] Thus, any member of the public who was flying within navigable airspace could have observed the plants within the curtilage of the mobile home, and Lt. Zerkle's plain-view observation of the plants was not a search within the meaning of the Fourth Amendment. Additionally, the fact that the defendant erected a fence around the marijuana is of no consequence because the plants were readily observable and in plain view from navigable airspace.

As the ground crew officers were not readily available and the helicopter was low on fuel, the decision was made to land the helicopter at a safe location in a back field, secure the area, and try to contact the owner. *Tr.* at 20. In essence, Lt. Zerkle and Cpl. Ward intended to do the exact same thing that officers on the ground legally could have done if they were available. Lt. Zerkle testified that they were descending to the back field, being careful not to destroy any property, when they noticed the defendant on the tractor. *Tr.* at 19, 21. The defendant was moving quickly toward the mobile home, and Lt. Zerkle believed the defendant was going to try to destroy the evidence. *Tr.* at 22. The Government argues that the defendant's actions at that point created an exigent circumstance that permitted the officers to change course and attempt to prevent the defendant from destroying the plants. The Court agrees.

In *Kentucky v. King*, 563 U.S. 452, 460 (2011), the Supreme Court explained that a search warrant is not needed "when the exigencies of the situation make the needs of law

---

[5]Although the defendant argues the helicopter was below 500 feet, Lt. Zerkle clearly said they were at least at 500 feet when he first saw the marijuana. *Tr.* at 16-17.

enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." 563 U.S. at 460 (internal quotation marks and citations omitted). For instance, a warrantless search of a home may be justified if "emergency aid" is necessary, officers "are in hot pursuit of a fleeing suspect," and, as relevant here, it is "to prevent the imminent destruction of evidence." *Id*. (internal quotation marks and citations omitted). However, the "destruction of evidence" exception does not apply if it is the police who "created or manufactured" the exigent circumstances. *Id*. at 461. (internal quotation marks and citations omitted). To this point, the Supreme Court explained that "the exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable" within the Fourth Amendment. *Id*. at 462. Additionally, the Fourth Circuit has stated that there need not be concrete evidence the evidence is on the verge of being destroyed, but the focus is "on what an objective officer could believe." *U.S. v. Grissett*, 925 F.2d 776, 778 (4th Cir. 1991) (citation omitted).

Although the defendant in this case argues that the officers created the exigent circumstances and should have obtained a warrant, the Court disagrees. Here, a reasonable police officer could believe that the defendant, who was driving so fast on a farm tractor in the direction of the marijuana that he was "bouncing" and "getting beat around," had the intent to destroy the plants before the officers got there.[6] At the time they noticed the defendant racing towards the plants, the officers already saw the marijuana in plain view, and they were acting reasonably by attempting to land in a back field. It was the defendant's behavior that caused the helicopter to change course to take more immediate action closer to where the marijuana was located. All the

---

[6]In fact, Lt. Zerkle testified that, in his twenty-seven years of experience eradicating marijuana, he had witnessed a number of people try various ways to avoid having their plants seized. *Tr.* at 28.

events that unfolded after the officers saw the defendant racing to the marijuana were the direct result of the exigent circumstances that the defendant himself created by his action. Therefore, the Court finds there was no Fourth Amendment violation when the officers altered their plans because they reasonably believed the defendant was going to destroy the evidence. Moreover, the fact Lt. Zerkle stated that, even when someone tries to destroy evidence, there most likely will be some evidence left behind, does not extinguish the officers' interest in protecting the entirety of the evidence. Obviously, in drug cases such as here, the number of plants and the weight of drugs found are significant factors in deciding what charges are filed, how prosecution proceeds, and ultimate sentences for convictions. Thus, the Court rejects the defendant's argument the officers should have obtained a warrant even if they believed the defendant intended to destroy the marijuana. Likewise, as the officers had the right to protect the evidence from imminent destruction, the Court rejects the defendant's argument that the officers trespassed by being with the curtilage of his home.

Accordingly, for the foregoing reasons, the Court **FINDS** the officers did not violate the defendant's Fourth Amendment rights, nor did they trespass upon the defendant's property and, thus, **DENIES** his Renewed Motion to Suppress the Search of his Property and the Seizure of Evidence from that Property. ECF No. 67.

The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:        March 9, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE